**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2021
Decided July 27, 2021

***Before***

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-1129

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:17-CR-00665(2) |
| PEDRO ZAVALA-ARMENDARIZ, *Defendant-Appellant*. | John Robert Blakey, *Judge*. |

**O R D E R**

Pedro Zavala-Armendariz pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine. *See* 21 U.S.C. § 841(a)(1). At sentencing, the government recommended that the "safety-valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a)—which abrogate statutory minimum sentences for some first-time, low-level offenders in federal drug cases—be applied to Zavala-Armendariz, who would otherwise face a statutory minimum of 120 months in prison and 5 years' supervised release. The district court acknowledged that the safety-valve applied and that Zavala-Armendariz was eligible for a below-minimum sentence. Nonetheless, the

district court sentenced him to 135 months in prison and no supervised release. Zavala-Armendariz now argues that the court failed to justify its decision not to impose a below-minimum sentence as permitted. But the district court more than adequately substantiated the ruling. We affirm.

**I.**

For more than three years, Zavala-Armendariz, a Mexican citizen unlawfully present in the United States, participated in an enterprise to distribute cocaine in Chicago. On each of at least fifteen trips, he transported between 150 to 250 kilograms of cocaine from a warehouse for distribution. After transporting the cocaine, on some occasions he returned to the warehouse between $200,000 and $1 million in proceeds.

Zavala-Armendariz pleaded guilty in 2019 to conspiring to distribute, and to possess with intent to distribute, five kilograms or more of cocaine. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2. As part of the plea agreement, the parties agreed that the safety-valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a) should be applied, Zavala-Armendariz's base-offense level should be reduced by two levels, and he should be sentenced without regard to any statutory minimum.

In a presentence investigation report, the probation office calculated a guidelines range of 135 to 168 months in prison based on Zavala-Armendariz's eligibility for the safety-valve. The office recommended an 84-month sentence.

In their sentencing recommendations and at the sentencing hearing (which began in March 2020 and then continued in January 2021), the parties debated an appropriate sentence for Zavala-Armendariz. The government continued to assert that the safety-valve provision should be applied but pressed for a within-guidelines sentence, given the seriousness of the crime (lasting several years and involving more than 2,000 kilograms of cocaine) and the need for deterrence (Zavala-Armendariz already had been removed to Mexico three times and still kept returning to the United States to engage in these crimes). Defense counsel sought a 72-month sentence based on Zavala-Armendariz's acceptance of responsibility, lack of criminal history, attendance at all hearings, low-level education, and struggle with addictions.

At the hearing in March 2020, the district court ruled that the safety-valve provision applied, and it calculated a guidelines range that reflected a two-level reduction in offense level. The court stated that "the mandatory minimum of ten years

does not apply" and that the "supervised release term would normally be at least five years but that again does not apply based on the safety valve." But before imposing a sentence, the court continued the hearing based on Zavala-Armendariz's comments at allocution that he had been coerced by co-conspirators to participate in the conspiracy. The court granted the parties' requests to adjourn the hearing to consider Zavala-Armendariz's statement and its potential impact on the guidelines calculations.

When the hearing eventually resumed several months later, the court again noted that the government was "maintaining safety valve," and it adopted without objection the guidelines calculations in the PSR—including the two-level reduction in offense level based on Zavala-Armendariz's eligibility for the safety-valve provision. The court then settled upon a sentence of 135 months in prison and no supervised release. With regard to Zavala-Armendariz's arguments in mitigation, the court accepted that much of his involvement in the enterprise was in response to threats of violence, and acknowledged his acceptance of responsibility, lack of criminal history, and struggles with addiction. The court then listed the arguments it had considered in aggravation, including the "extremely serious" and long-lasting crimes—which contributed to "a significant amount of human misery"—and Zavala-Armendariz's resumption of criminal activity after having been removed from the United States. The court stated that, having considered the 18 U.S.C. § 3553(a) factors, the sentence imposed "would be the same even if [the] guideline calculation [were] different."

The court then entered its judgment. On the "Statement of Reasons" form attached to the judgment, the court set forth its "findings on mandatory minimum sentence." It checked a box with the following stock language: "one or more counts of conviction carry a mandatory minimum term of imprisonment, but the sentence imposed is below the mandatory minimum term because the court has determined that the mandatory minimum term does not apply based on … the statutory safety valve 18 U.S.C. § 3553(f)."

## II.

On appeal, Zavala-Armendariz argues that the district court procedurally erred by not adequately explaining why it did not impose a sentence below the statutory minimum, pursuant to the safety-valve. Though he did not tell the court that he objected to its explanation of the safety-valve, Zavala-Armendariz now says that it is unclear that the court knew it could have sentenced him below the 120-month minimum.

We are satisfied that the court properly applied the safety-valve provision when choosing Zavala-Armendariz's sentence. True, the court did not elaborate upon Zavala-Armendariz's eligibility for the provision, but the transcript leaves no question that the court regarded him as eligible and correctly applied the provision. At the March 2020 hearing, the court specified that the safety-valve provision applied in this case and that a sentence below the statutory minimum was available. At the hearing in January 2021, the court used the safety-valve provision to reduce by two levels Zavala-Armendariz's offense level, sentenced him to no supervised release despite the five-year statutory minimum, and recorded in the Statement of Reasons that the statutory minimum did not apply. On this record, the court knew how to apply the provision and did so correctly.

The court also sufficiently explained why it imposed the within-guidelines, 135-month sentence, even though a sentence below the 120-month statutory minimum was available. It addressed each of Zavala-Armendariz's arguments in mitigation, acknowledging his acceptance of responsibility, lack of criminal history and violence, low education, and struggles with addiction. Despite these factors, the court reasonably concluded that, on balance, a sentence at the bottom of the guidelines range was necessary given the seriousness of Zavala-Armendariz's crimes, his repeated unlawful reentries into the country after removal in order to commit these crimes, and his likelihood of recidivism. *See* § 3553(a).

To the extent Zavala-Armendariz believes that the court had to impose a sentence below the statutory minimum merely because § 3553(f) permits him to do so, he is mistaken. The safety-valve provision does not require a court to impose a sentence below the statutory minimum; rather, it requires only that the court impose a sentence "pursuant to the guidelines … without regard to any mandatory minimum sentence." § 3553(f). The court did precisely that—it calculated Zavala-Armendariz's guidelines range, explained why a sentence at the bottom of that range was warranted given the sentencing factors, and did not adjust the sentence based on a statutory minimum.

AFFIRMED